IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DANNY A., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:24-CV-2584-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

MEMORANDUM OPINION AND ORDER

Pursuant to 28 U.S.C. § 636(b) and the parties' consent to proceed before the undersigned United States magistrate judge, the Court now considers this appeal of the denial of Plaintiff's application for Social Security supplemental income and disability benefits. For the reasons stated here, the Commissioner's decision is **REVERSED**.

## I. BACKGROUND

### A. Procedural History

Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). Doc. 1. In 2023, Plaintiff filed for DIB and SSI, alleging a period of disability beginning in October 2022 and resulting from Human Immunodeficiency Virus ("HIV"), rheumatoid arthritis in his knees, hypertension, lower back problems, and asthma.[1] Doc. 10-1 at 51. Plaintiff's claim was

---

[1]Plaintiff only alleges error in the ALJ's evaluation of his physical impairments, Doc. 11 at 2, and does not allege any error in the ALJ's consideration of his mental impairments. Thus, the Court's review focuses on the former.

denied at all administrative levels, and he now appeals to this Court under 42 U.S.C. § 405(g). Doc. 10-1 at 50-64, 91-92, 18-26, 134-36, 6-10.

**B. Factual History**

In 2022, Plaintiff visited Dr. Henry Armstrong, M.D., and reported "bilateral lower back pain with radiation down the posterior lateral leg to the ankle" and hand and wrist pain. Doc. 10-2 at 305. Plaintiff was prescribed hydrocodone-acetaminophen and meloxicam for pain management. Doc. 10-2 at 306. A month later, Plaintiff returned to Dr. Armstrong and reported issues with dysphagia (trouble swallowing) when eating, and was referred to an ENT (ear, nose and throat specialist). Doc. 10-2 at 298-300.

During a visit in 2023, Plaintiff reported to Dr. Armstrong that his lower back pain remained unchanged, with a constant dull ache, and that he had increased hoarseness. Doc. 10-2 at 271-73. When Plaintiff returned the next month for a follow-up visit, Dr. Armstrong determined that Plaintiff's blood pressure was hypotensive (low). Doc. 10-2 at 263. Later that year, Plaintiff also reported to North Texas Imaging for a chest x-ray, which revealed hyperinflation of his lungs and resulted in a diagnosis of mild pulmonary emphysema. Doc. 10-2 at 334.

Throughout 2023, Plaintiff reported to the Parkland ACCESS clinic for treatment for symptomatic HIV and was prescribed medication to control the virus. Doc. 10-2 at 94, 100, 108. Plaintiff later reported to Dr. Nallu Reddy, M.D., at WellMed at Kiest Park for similar complications and was prescribed Macrobid and doxycycline for one week. Doc. 10-2 at 219-20. Through 2022 to 2024, Dr. Armstrong assessed Plaintiff's HIV as asymptomatic. Doc. 10-2 at 227, 232, 352, 391, 404.

2

**C. Medical Opinion Evidence**

Records reflect that, in 2023, Drs. Stephen Garrish, M.D., and Kavitha Reddy, M.D., separately noted that Plaintiff could "complete personal care without limitations, prepare meals, can do house work and dusting, can drive a car, go out alone, shops in stores, [is] able to handle finances, socializes with others, attends church and can pay attention good." Doc. 10-1 at 53, 58. They also both noted that Plaintiff could "walk 100 yards before resting [and] can follow instructions and handle stress." Doc. 10-1 at 53, 58.[2]

In 2024, Plaintiff was examined by his treating physician, Dr. Henry Armstrong. Doc. 10-2 at 166. Dr. Armstrong opined that Plaintiff needed a cane to ambulate effectively and could not lift or carry more than 10 pounds during a workday. Doc. 10-2 at 166-68. Dr. Armstrong further opined that Plaintiff likely needed to miss more than four days of work per month and had a limitation causing off-task behavior more than 25 percent of the day, secondary to Plaintiff's symptoms. Doc. 10-2 at 165-67. Dr. Armstrong also stated that Plaintiff needed to shift positions "at will" between sitting and standing and required a reduction to no more than occasional bilateral reaching and handling. Doc. 10-2 at 166-67.

**D. Hearing Testimony**

At the 2024 administrative hearing, Plaintiff testified that he had arthritis and nerve damage in his wrists and hands, that he could not stand for long periods of time, and that he wore a wrist splint on his left arm for arthritis. Doc. 10-1 at 40-44. Plaintiff also stated he was

---

[2]The only report in the record of the state agency medical consultants' (SAMCs') examinations are the nearly identical conclusions contained within the initial Disability Determination. Doc. 10-1 at 53, 58. Thus, the details of the examination and any observations of the SAMCs at the time of the examinations, if any, are unknown.

prescribed a cane to use when getting around his home.  Doc. 10-1 at 43.  Plaintiff stated he had complications from HIV and problems with his esophagus that interfered with his ability to properly swallow, and that he had been referred to a physician for this condition.  Doc. 10-1 at 42.

A vocational expert ("VE") also testified.  In response to the ALJ's inquiry, the VE stated that someone with Plaintiff's age, education, work experience, and the ALJ's hypothetical RFC could not perform Plaintiff's past work as actually performed, but could perform that job as generally performed, as well as other medium work[3] available in the national economy, such as food service worker, janitor, and linen room attendant.  Doc. 10-1 at 46-47.  The VE also testified that a hypothetical individual with Plaintiff's age, education, and work experience would be limited to light work[4] if they could only sit, stand, and walk for six hours and lift or carry 20 pounds occasionally and 10 pounds frequently.  Doc. 10-1 at 47.  Specifically, the VE testified that the hypothetical individual could perform the light exertion occupations of collator operator, cafeteria attendant, or price marker.  Doc. 10-1 at 48.  Lastly, the VE testified that Plaintiff had no transferable skills from his past relevant work.  Doc. 10-1 at 48.

---

[3]Medium work is defined as:

> lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.

SSR 83-10 (S.S.A. 1983), 1983 WL 31251.

[4]Light work is defined "as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." *Id.*

**E. The ALJ's Findings**

Following the administrative hearing, the ALJ issued his Hearing Decision utilizing the five-step sequential evaluation set forth in 20 C.F.R. § 416.920 in determining whether Plaintiff was disabled.  At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2028, and had not engaged in substantial gainful activity since October 3, 2022.  Doc. 10-1 at 20.  At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease of the spine and osteoarthritis.  Doc. 10-1 at 20.  However, the ALJ also found that none of Plaintiff's impairments, singularly or in combination, met or medically equaled any listed impairment.  Doc. 10-1 at 23.

At step three, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC")[5] to perform

> medium work as defined in 20 CFR 404.1567(c), except he can operate foot controls frequently bilaterally. He can operate hand controls with the left upper extremity frequently.  He can frequently reach overhead bilaterally.  He can perform handling[,] fingering, and feeling frequently with the left upper extremity. He can climb ramps and stairs frequently, and he can climb ladders, ropes, and scaffolds occasionally.  He can balance, stoop, kneel, and crouch frequently. He can crawl occasionally.  He can have occasional exposure to unprotected heights, extreme cold, and in [sic] vibration.

Doc. 10-1 at 23.

At step four, the ALJ found, based on the VE testimony, that Plaintiff had the RFC to perform his past relevant work as a laborer.  Doc. 10-1 at 25.  The ALJ thus concluded that Plaintiff was not disabled under the Act.  Doc. 10-1 at 26.

---

[5]The RFC is "the most [a claimant] can still do despite [the claimant's] limitations."  20 C.F.R. § 416.945(a)(1).

## II. APPLICABLE LAW

The definition of disability under the Act is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner utilizes a sequential five-step inquiry: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do his past relevant work; and (5) if so, whether the impairment prevents the claimant from doing any other available work. Webster v. Kijakazi, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. Id. (citation omitted). If the claimant meets his burden, the burden then shifts to the Commissioner to "prove the claimant's employability." Id. (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." Taylor v. Astrue, 706 F.3d 600, 602 (5th Cir. 2012).

> And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (internal citations and quotation marks omitted). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). A finding that substantial evidence does

not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (cleaned up).

## III. ANALYSIS

### A. The RFC determination was not supported by substantial evidence.

Plaintiff's sole claim on appeal is that the "ALJ erred in assessing a medium RFC based upon his own lay interpretation of objective medical data after rejecting the sole opinion of record." Doc. 11 at 7. Relying on the holding in *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1985) and other analogous opinions, Plaintiff argues, *inter alia*, that the ALJ rejected the only medical opinions of record, interpreted the raw medical data himself, and imposed an RFC based on the ALJ's lay opinion of the medical evidence. Doc. 11 at 10-11. The Commissioner replies that "substantial evidence supports the ALJ's RFC finding because the ALJ addressed Plaintiff's impairments, including the medical opinions, and properly determined that he was not disabled." Doc. 12 at 1. Upon review, the Court finds that Plaintiff's arguments have merit.

Before considering Plaintiff's arguments, the Court must determine what weight the ALJ gave to the medical opinions, as relevant to Plaintiff's physical impairments. In his decision, the ALJ stated he did not "give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources," and further held:

> I have fully considered the medical opinions and prior administrative medical findings as follows:

* * *

7

> I found unpersuasive the opinions provided by the State agency medical consultants, who found insufficient evidence with which to make a determination.[6] The evidence of record supports and is consistent with a finding of severe impairments.
>
> The disability placards provided by Dr. Armstrong, as well as the opinion limiting the claimant to a range of sedentary work, are unpersuasive.  These opinions are not supported by the rather benign physical exams with an ambulatory gait throughout with no use of an assistive device and no evidence of abnormalities to the upper extremities, and are inconsistent with the conservative treatment history throughout.  These opinions are inconsistent with the conservative treatment history, both before and following the alleged onset date, with little evidence of any change in the claimant's condition between 2021 and 2022.  Further, the claimant was able to engage in SGA in 2020 and 2021 with similar treatments, and he has continued to engage in at least some work activity following the alleged onset date as well, which suggests a higher level of functioning.

Doc. 10-1 at 24-25 (internal citations to the original record of exhibits omitted).  In light of the

ALJ's finding that the SAMCs opinions are "unpersuasive," the only remaining medical source

in the record is Dr. Armstrong, the treating source, whose opinions the ALJ found unsupported

and also misstates the substance of.  *Compare, e.g.*,  Doc. 10-2 at 167 (Dr. Armstrong reporting

that Plaintiff needs to use a cane) *with* Doc. 10-1 at 25 (the ALJ's finding that Dr. Armstrong's

opinions were "not supported by the rather benign physical exams with an ambulatory gait

throughout with no use of an assistive device and no evidence of abnormalities to the upper

extremities).

The ALJ assesses a claimant's RFC "based on all of the relevant medical and other

evidence."  20 C.F.R. § 404.1545(a)(3).  When evaluating physical impairments, the ALJ will

"first assess the nature and extent of [the plaintiff's] physical limitations and then determine [the

---

[6] The Court notes that the citation to the opinions of the State agency medical consultants in the do not resolve to any separate SAMC report(s), but to the initial agency Disability Decision.  Doc. 10-1 at 53, 58.

plaintiff's] residual functional capacity for work activity on a regular and continuing basis." *Id.* § 404.1545(b). The ALJ "must build an accurate and logical bridge between the evidence and the final determination." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010). The ALJ is not required to incorporate limitations in the RFC that are not supported by the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). Nevertheless, "the ALJ cannot completely disregard medical testimony in making an RFC determination . . . ." *Jones v. Kijakazi*, 625 F. Supp. 3d 549, 553 (S.D. Miss. 2022).

In *Ripley*, the ALJ had ruled that the claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. 67 F.3d at 557. The Court of Appeals for the Fifth Circuit noted that the record contained a vast amount of evidence establishing that the plaintiff had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. The court rejected the Commissioner's argument that the medical evidence substantially supported the ALJ's conclusion because the court was unable to determine the effects of the claimant's conditions, "no matter how small," on the claimant's ability to work, absent a report from a qualified medical expert. *Id.* at 557 n.27 (internal quotation mark omitted).

Although the Plaintiff's "RFC is ultimately the ALJ's determination," there must be a "*foundational* basis" for the determination. *Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-1948, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (Toliver, J.) (emphasis in original).

9

In determining a claimant's RFC, an ALJ may not—without medical experts' opinions—derive the claimant's RFC solely from evidence of the claimant's reported medical conditions. *Ripley,* 67 F.3d at 557. The ALJ also may not rely on his own unsupported opinion of the limitations the applicant's medical conditions *might* present. *Id.*; *see also Frank v. Barnhart,* 326 F.3d 618, 622 (5th Cir. 2003) (warning an ALJ "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong"). Instead, the ALJ should request a "medical source statement" describing types of work the claimant is still capable of performing despite his condition. *Ripley,* 67 F.3d at 557. Absent such a statement, there is typically insufficient evidence to support an RFC determination. *Id.* at 557-58 (remanding the case with instructions to obtain a report from a treating physician regarding effects of the plaintiff's condition on his ability to work). "Medical source" is a term of art that includes treating, examining, and consultative resources. 20 C.F.R. § 404.1502.

In the instant case, the Commissioner suggests that the ALJ's RFC need not be based on any medical source opinion, quoting the Fifth Circuit as stating, "experienced ALJs can draw their own conclusions based on accurate medical information." Doc. 12 at 5 (quoting *Barrett v. Berryhill,* 906 F.3d 340, 343 (5th Cir. 2018)). This argument is misleading, however, as the Commissioner takes the quoted passage wholly out of context. In *Barrett,* the issue before the court was whether the ALJ erred by failing to subpoena a medical consultant to testify at the administrative hearing. In context, the court, comparing the relative importance of a consulting source to that of a treating source, held:

> the risk that mistakes in a medical consultant's RFC form will wrongly deprive the claimant of benefits is not as great as the risk posed by inaccuracies in an applicant's underlying medical records. The role of an examining physician is twofold—their reports may contain ultimate opinions, but they also contain important factual

observations. Those observations about an applicant's mental and physical condition are the first building block in the disability determination. They are the primary source that medical consultants and vocational experts use to form their opinions. Those opinions, akin to secondary sources, are less critical than the underlying observations because experienced ALJs can draw their own conclusions based on accurate medical information.

*Id.*

The Commissioner likewise cites the Fifth Circuit's holding *Wills v. Kijakazi* as dispensing with *Ripley* requirement of a medical source opinion where like "in this case, the ALJ heard Plaintiff's testimony, assessed his credibility against that objective medical evidence, determined his symptoms were legitimate, but not as limiting as he claimed, and provided a reasoned basis for the RFC finding."  *Wills* is easily distinguished from the case at bar, however, since there, as the court noted, the record was much more extensive and developed than the one in this case.  As the court noted in *Wills*,

> the "record was replete with medical documents that spanned years." *See Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016). There were over 1,000 pages of Wills's medical records which included extensive progress notes — prepared by health care professionals directly caring for Wills — regarding her impairments, treatment, progress, mobility, and symptoms. Many of those records corresponded to examinations and procedures occurring subsequent to the medical consultants' evaluations.

*Wills v. Kijakazi*, No. 22-20609, 2023 WL 4015174, at *3 (5th Cir. June 14, 2023).  Again, that is not this case here, where the medical evidence is much more limited and disregarding the only medical source opinion was necessarily more impactful.

Importantly, nothing in *Barrett*, *Wills*, or any of the other cases the Commissioner cites in support overruled the Fifth Circuit's holding in *Ripley* that an ALJ may not derive the applicant's RFC solely from evidence of the claimed medical conditions without the benefit of a medical

expert's opinion or simply rely on the ALJ's own unsupported opinion of the limitations resulting from the applicant's medical conditions.  *See Ripley*, 67 F.3d at 557.

Again, the ALJ rejected the medical opinions of the consultative examiners Drs. Gerrish and Dr. Reddy because they found insufficient evidence with respect to Plaintiff's physical impairments (notably, the ALJ did not find the SAMCs opinions unpersuasive only in part). Doc. 10-1 at 25.  The ALJ also rejected the opinions of Dr. Armstrong concerning the effects of Plaintiff's physical impairments, finding that they were not supported by Plaintiff's medical history and were inconsistent with Plaintiff's treatment history and prior ability to work.  Doc. 10-1 at 25.  After rejecting all of the medical opinions of record, the ALJ necessarily determined Plaintiff's physical RFC based on his own evaluation of findings from Plaintiff's various physical exams, tests, and readings.[7]  Doc. 10-1 at 24-25.  *See Fitzpatrick v. Colvin*, No. 3:15-cv-3202, 2016 WL 1258477, at *7 (N.D. Tex. Mar. 31, 2016) (Fitzwater, C.J.) (citation omitted) (finding error where the ALJ made "the RFC determination after rejecting the only medical opinions in the record that addressed the effect of [the claimant's] . . .  impairments on his ability to work"); *see also Greer v. Comm'r of Soc. Sec.*, No. 7:21-cv-32, 2022 WL 4239356, at *7 (N.D. Tex. Aug. 9, 2022) (Ray, J.) (ALJ is free to reject medical opinions, provided that he does not "then independently decide the effects of a claimant's impairments on [the plaintiff's] ability to perform work-related activities"), *adopted*, 2022 WL 4240948 (N.D. Tex. Sept. 14, 2022)).

In reaching this conclusion, the Court is mindful that "[e]ven the absence of medical opinions does not necessarily render a record inadequate to support an ALJ's RFC

---

[7]Although the ALJ found state examiners' medical opinions regarding Plaintiff's mental impairments partially persuasive, Doc. 10-1 at 24, again, Plaintiff's RFC is confined to his physical impairments.

determination." *Nic R. v. Kijakazi*, No. 3:22-cv-106, 2023 WL 2529930, at \*5 (N.D. Tex. Feb. 21, 2023) (citing *Ripley*, 67 F.3d at 557 and *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam)) (Rutherford, J.), *adopted by* 2023 WL 2531492 (N.D. Tex. Mar. 15, 2023). However, "as a non-medical professional, the ALJ cannot 'draw his own medical conclusions from some of the data, without relying on a medical expert's help,'" as appears was the case here. *Kenneth S. v. Saul*, No. 3:18-cv-2450, 2019 WL 3881618, at \*5 (N.D. Tex. July 31, 2019) (Horan, J.) (quoting *Frank*, 326 F.3d at 621-22), *adopted by* 2019 WL 3859653 (N.D. Tex. Aug. 15, 2019).

Thus, the Court finds the ALJ's RFC determination was not supported by substantial evidence.

### B. The ALJ's error was not harmless.

Nevertheless, because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected," Plaintiff must show he was prejudiced by the ALJ's disregard for the medical opinion evidence, or lack thereof, in assessing his RFC. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). To establish prejudice, Plaintiff must show the failure of the ALJ to rely on a medical opinion casts doubt on the existence of substantial evidence supporting his disability determination. *See McNair v. Comm'r of Soc. Sec.*, 537 F. Supp. 2d 828, 827 (N.D. Tex. 2009) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citing *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

Here, the ALJ determined that Plaintiff could perform his past work (medium work). The only medical source to address Plaintiff's physical RFC, Dr. Armstrong, stated that Plaintiff was only capable of less than medium work. Doc. 10-2 at 165-68. Importantly, the primary source of the inconsistencies the ALJ noted as to Plaintiff's subjective complaints appears to be a third-party function report by Plaintiff's sister, which is not medical evidence. Doc. 10-1 at 24 (citing Doc. 10-1 at 222). Plaintiff's sister reported she spends three days a week caring for Plaintiff because he struggles to complete daily activities, which is not inconsistent with Plaintiff's claims. Doc. 10-1 at 222-29.

At bottom, based on this record, the Court cannot find that the ALJ's determination would not have been different if he had had the benefit of the opinion of a trusted medical source regarding the impact of Plaintiff's impairments on his ability to work. Thus, the Court concludes the ALJ's failure to develop the record was not harmless, and remand is warranted. *See Ripley*, 67 F.3d at 557 (holding that instead of relying on his or her own interpretation of the medical evidence, the ALJ should request a "medical source statement" describing types of work the claimant is still capable of performing despite his condition); *Donna A.*, 2023 WL 5004867, at *6 (collecting analogous cases in which judges of this Court have found that the ALJ's failure to rely on a medical opinion concerning the claimant's RFC necessarily casts doubt on the disability determination").[8]

---

[8] To be clear, the Court does not suggest that the ALJ's disability finding was wrong, only that it is not legally supported by the record evidence. *See Taylor*, 706 F.3d 602 (the Court's deferential review is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence").

## IV. CONCLUSION

For the reasons discussed herein, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision is **REVERSED**, and this case is **REMANDED** for proceedings consistent with this opinion.

**SO ORDERED** on March 24, 2026.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE